IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION ) | |
| ) | No. 06 M 295 |
| OF ) | |
| ) | Magistrate Judge |
| EDWARD MAZUR ) | Arlander Keys |

## MEMORANDUM OPINION AND ORDER

This extradition proceeding is currently before the Court on
three motions filed by the relator, Edward Mazur. The Government
of the Republic of Poland seeks to extradite Mr. Mazur, a citizen
of both Poland and the United States, to face charges that he
solicited the murder of General Marek Papala, the Commander
General of the Warsaw Department of Police, who was gunned down
in front of his home on June 25, 1998. The Court has scheduled a
hearing on the merits of the extradition complaint for April 9,
2007. Counsel for Mr. Mazur has sought discovery to prepare for
that hearing, and, to that end, he has filed two motions - a
motion for issuance of subpoenas and a motion to compel certain
discovery from the government. Counsel has also filed a motion
asking the Court to dismiss the complaint and vacate the
extradition warrant and detention order. Each of these has been
fully briefed and is now ripe for resolution.[1]

---

[1]Counsel has also filed a motion to continue the extradition hearing.
The Court will address that motion at the next hearing on March 21, 2007,
after the parties have had an opportunity to digest the Court's rulings today
and are in a better position to advise the Court as to how much time they will
need to prepare for the hearing.

A.  Mr. Mazur's Motion to Dismiss the Complaint and
    Vacate the Extradition Warrant and Detention Order

In his first motion, Mr. Mazur urges the Court to dismiss
the complaint because "certain structural barriers . . . render
these proceedings unconstitutional . . . ."  Mazur's Motion to
Dismiss, p. 2.  With regard to the first barrier, Mr. Mazur
argues that the statutory scheme for resolving extradition
complaints under 18 U.S.C. §3184 is unconstitutional on its face
because it calls for a judge or magistrate judge to make the
probable cause determination and then allows the Secretary of
State to make the final decision.  If the magistrate judge is
acting in a judicial capacity, Mr. Mazur argues, the procedure
violates Article III of the Constitution and the principle of
separation of powers; if the magistrate judge is acting in a non-
judicial capacity, the statute violates Mr. Mazur's Fourth and
Fifth Amendment rights.  *See* Mazur's Motion to Dismiss, p. 2.
Courts that have considered these arguments have rejected them.
*See DeSilva v. DiLeonardi*, 125 F.3d 1110, 1113 (7th Cir. 1997);
*Lo Duca v. United States*, 93 F.3d 1100, 1108-1111 (2d Cir.
1996); *Lopez-Smith v. Hood*, 121 F.3d 1322, 1327 (9th Cir. 1997).
This Court similarly rejects them.

Mr. Mazur also argues that this Court lacks the authority to
preside over this matter.  He argues that 18 U.S.C. §3184 permits
magistrate judges to conduct extradition hearings only if
"authorized to do so by a court of the United Sates," and that

the rule that previously granted such authority to judges in this district no longer exists. As the government has explained, the old local rules of this district expressly authorized magistrate judges to perform the tasks outlined in §3184. *See* Old General Rule 1.70(b)(1)(j) ("United States Magistrates in this District are authorized to perform the following duties in criminal cases and related matters: . . . (j) Issue a warrant for the arrest of a fugitive from a foreign country and conduct all necessary hearings under the provisions of the proper treaty or convention) (citing 18 U.S.C. §3184). The cross-reference guide on the court's website indicates that the old general rule, which delineated specific and itemized powers, was replaced by Local Criminal Rule 5.1, which contains a general grant of authority. The new rule provides that "[m]agistrate judges in this district shall have the power to perform all duties set forth in the United States Code and the Federal Rules of Criminal Procedure." This new rule, though not as specific as the old rule, nonetheless authorizes magistrate judges to perform the duties spelled out in §3184.

Mr. Mazur argues that this rule cannot apply here, and he argues that the government cannot have it both ways, cannot on the one hand argue that this is not a criminal proceeding, yet argue on the other hand that the criminal rules apply. The Federal Rules of Criminal Procedure expressly provide that they

do not apply in extradition proceedings, *see* Fed. R. Crim. P. 1(a)(5)(A), but the local criminal rules of this district do not contain such a provision. And certainly applying one general criminal local rule - formerly part of the general rules of this court - does not turn this matter into a criminal proceeding. More importantly, it was not the government, but the administration of this district court, that revised the local rules and created the cross reference guide showing that the former general local rule had been replaced with a general criminal local rule. The Court is authorized to hear this matter.

Next, Mr. Mazur argues that these proceedings threaten to deprive him of liberty without due process of law, in violation of the Fifth Amendment. In this regard, Mr. Mazur argues that "the actions of the Polish government and the limitations imposed by Polish law and practice" will prevent him from being allowed to present "key evidence that would negate probable cause." *Id.* Mr. Mazur's counsel represents to the Court that the Polish prosecutors could charge him with witness tampering and bribery if he attempts to contact witnesses who could demonstrate Mr. Mazur's innocence; he also represents that, if he chooses, despite the possibility of charges, to interview witnesses to ensure a full understanding of the facts prior to the extradition hearing, those witnesses may be disqualified from participating

4

in any criminal trial in Poland. *Id.*, pp. 2-3. Thus, he argues, he cannot effectively and meaningfully contest extradition here without compromising or even forfeiting Mr. Mazur's defense at trial in Poland. *Id.*, p. 3. He also argues that Mr. Mazur's conviction in Poland appears to be a foregone conclusion, given the political motivations of the Polish prosecutors and the determination of the Polish government and press to pin General Papala's murder on Mr. Mazur. *Id.*

Initially, the Court notes that the record contains nothing to support counsel's dramatically compelling, but conclusory, statements. Mr. Mazur asks the Court to "dismiss the extradition proceeding unless and until the Polish authorities allow his counsel to investigate fully and present witnesses on his behalf without requiring him to waive his right to a fair trial if he is extradited." Motion, p. 16. But other than the arguments made in Mr. Mazur's motion, the Court has no evidence that this Hobbesian choice even exists. To support his motion, Mr. Mazur submitted a memorandum dated January 11, 2007 prepared by Stanislaw Rymar and Natasza Garnczarek, Mr. Mazur's defense counsel in Poland. In it, Polish counsel advises Mr. Mazur's american counsel that they will not be given access to the prosecutors' files and that, under Polish law, they are not permitted to interview or contact witnesses who may potentially testify for or against Mr. Mazur at trial. *See* Exhibit 3. Mr.

Mazur argues that these "barriers" prevent him from presenting the defense he is entitled to present here, thereby depriving him of his due process rights under the United States Constitution.

In response, the government submitted a letter from Anna Adamiak-Derendarz of the Appellate Prosecutor's Office in Warsaw dated February 14, 2007. In that letter, Ms. Adamiak-Derendarz confirms that polish custom and practice precludes defense counsel from interviewing witnesses directly and that such interviews must be conducted by the prosecutor (though defense counsel may request the interview, may attend the interview and may even question the witness). The letter also explains that, despite this, prosecutors did grant, on very short notice, defense counsel's request to interview Waldemar Zelek. Finally, the letter explains that, in Poland, "bodies investigating criminal proceedings are obliged to investigate and consider circumstances speaking both in favor and against the accused," and that due process rights are guaranteed by both the Polish Constitution and the provisions of the Polish Code of Criminal Procedure. Thus, it is hardly established that Mr. Mazur will be prevented, because of what is going on in Poland, from presenting the defense that would be permitted him under the laws of the United States.

And this Court need not decide whether, in fact, Polish law does or does not prohibit Mr. Mazur from interviewing witnesses,

seeing exculpatory materials, etc. None of that is relevant for present purposes. "Extradition depends on probable cause to believe that [the relator] committed an offense covered by the extradition treaty." *DeSilva*, 125 F.3d at 1112 (citing *Bovio v. United States*, 989 F.2d 255, 258 (7th Cir. 1993); *Eain v. Wilkes*, 641 F.2d 504, 507-08 (7th Cir. 1981). The extradition court "cannot resolve factual disputes; for that matter we cannot address most legal issues pertinent to the charges." *Id.*

Additionally, although Mr. Mazur argues that the Court can and should consider whether the impact of Polish law, etc. will deprive him of his due process rights in this Court, this is just an end-run around arguments involving the rule-of-non-inquiry. That rule prevents the Court from considering the procedures or treatment that await Mr. Mazur in Poland. *See, e.g., Lindstrom v. Gilkey*, 1999 WL 342320, at *11 (N.D. Ill. 1999); *United States v. Kin-Hong*, 110 F.3d 103, 110-111 (1st Cir. 1997)("More than just a principle of treaty construction, the rule of non-inquiry tightly limits the appropriate scope of judicial analysis in an extradition proceeding. Under the rule . . . courts refrain from "investigating the fairness of a requesting nation's justice system," and from inquiring "into the procedures or treatment which await a surrendered fugitive in the requesting country.")(citations omitted). The rule would seem to apply regardless of whether the Court's inquiries come on the front end

(in terms of how they affect discovery) or on the back end (in terms of how they affect the ultimate decision of whether or not the certificate of extradition should issue).

Second, and more importantly, the Court is not persuaded that the evidence being kept from it would even bear on the limited issues properly before it. The discovery Mr. Mazur seems to be seeking would fall outside the scope of this inquiry. For example, Mr. Mazur submitted a statement from Anrzej Zielinski dated July 26, 2004 in which he says that he does not know Edward Mazur, *see* Motion to Dismiss, Exhibit 1, and he submitted a statement given by Artur Zirajewski on October 4, 1999 that appears to summarize Mr. Zirajewski's knowledge of the Papala murder and does not mention Mr. Mazur, *id.*, Exhibit 2. These statements relate to the credibility of the witnesses whose statements form the basis of the government's extradition complaint; they are precisely the type of evidence that courts have been instructed not to consider for purposes of the extradition hearing. *See Sahagian v. United States*, 864 F.2d 509, 514 n.6 (7th Cir. 1988)(quoting *Eain*, 641 F.2d at 511).

Mr. Mazur also identifies certain evidence relating to persons he refers to as individuals A, B, C, D, and E. Individual A allegedly is prepared to testify that he "invariably" drove Mr. Mazur when the latter was in Poland and that he never drove Mr. Mazur to Gdansk, where the meeting with

Messrs. Zirajewski and Zielinski is alleged to have occurred. Individual B is a former high ranking police officer and friend of General Papala who will testify that, in a meeting with the Polish prosecutor, the latter "appeared to indicate" that Mr. Mazur had never been to Gdansk. Individual C could testify that Mr. Mazur was not in Gdansk in April 1998 and never met with Messrs. Zirajewski and Zielinski. And Individuals D and E will testify that Mr. Mazur has never dressed the way the witnesses said he dressed when he allegedly solicited them for the murder of General Papala. *See* Mazur's Motion to Dismiss, p. 5.

With regard to the evidence available from individuals A, D and E, the Court first notes that this evidence does not exactly prove Mr. Mazur's innocence; it would hardly be surprising that, if Mr. Mazur did commit the crime charged, he would take steps to cover his illicit actions, including employing someone other than his usual driver to take him to the meeting place and dressing differently than he otherwise would to disguise himself when he appeared for the meeting. More to the point, this is exactly the kind of evidence courts have been instructed to exclude in these proceedings: it attempts to controvert, but certainly does not obliterate, the evidence presented by the government. So too with the evidence available from individual C; it merely attempts to controvert the witnesses' statements that Mr. Mazur *was* in Gdansk and *did* meet with them. The evidence available from

individual B comes closer to the mark, because it suggests that
the prosecutor is either fabricating evidence or presenting
evidence he knows is false. But testimony that the prosecutor
"appeared to indicate" that Mr. Mazur had never been to Gdansk
hardly "obliterates" the government's probable cause evidence. To
the extent this evidence all otherwise supports Mr. Mazur's claim
of innocence, it is beyond the limited inquiry before this Court.
In short, the information and evidence Mr. Mazur says is being
withheld because of Polish law and by the Polish prosecutors,
bears on either the guilt or innocence question, or on
humanitarian and fairness type issues, neither of which is
properly raised in this proceeding in this Court. Accordingly,
the Court rejects Mr. Mazur's arguments concerning the impact of
Polish law and practice, as well as the impact of any vendetta on
the part of the Polish government or press, on these proceedings.

Finally, on this score, Mr. Mazur argues that "the
government's interest in vindicating the rights of one of its
citizens . . . greatly outweigh[s] the interest in furthering
foreign policy by turning over an innocent person who has been
wrongfully accused." *Id.*, p. 19. Hard to disagree. But that is
an argument for the Secretary of State, not for this Court. *See*
*United States v. Kin-Hong*, 110 F.3d 103, 111 (1st Cir. 1997)("It
is not that questions about what awaits the relator in the
requesting country are irrelevant to extradition; it is that

10

there is another branch of government, which has both final say and greater discretion in these proceedings, to whom these questions are more properly addressed.").

Lastly, with respect to the barriers to due process, Mr. Mazur argues that the archaic standard allowing relators to present "explanatory evidence" but not "contradictory evidence" is so incomprehensible and irrational, vague and incoherent, that it deprives relators like Mr. Mazur of due process of law. *Id*. To be sure, an extradition proceeding is a strange bird: it is not a criminal proceeding, though it involves criminal conduct; and, although it is a federal court hearing, neither the federal rules of criminal procedure, nor the federal rules of evidence applies. An extraditee is not permitted to present a "defense" in the sense that we typically apply that term; he may rebut probable cause and he may explain the evidence offered by the extraditing country. Evidence that "explains away or completely obliterates probable cause" is admissible; evidence that "merely controverts the existence of probable cause" is not. *E.g.*, *Lindstrom v. Gilkey*, No. 98 C 5191, 1999 WL 342320, at *5 (N.D. Ill. May 14, 1999)(citations omitted). "The purpose of the 'contradictory'/'explanatory' distinction is two-fold: "to afford an accused person the opportunity to present reasonable clear-cut proof which would be of limited scope and have some reasonable chance of negating a showing of probable cause" while preventing

the accused person from 'turn[ing] the extradition hearing into a full trial on the merits.'" *Id.*, 1999 WL at *5 (quoting *In re Extradition of Sindona,* 450 F.Supp. 672, 685 (S.D. N.Y. 1978)).

This amorphous standard requires a case-specific assessment of the evidence and would seem likely to lead to the sort of "I know it when I see it" types of calls that might make it difficult for a relator to plan his evidentiary attack. For this reason, courts might be more inclined to err on the side of allowing discovery, knowing that the evidence can be excluded if it crosses the line drawn (though not sharply) by the standard. Here, Mr. Mazur has done nothing more than suggest that evidence that should be admissible exists, but will be unavailable to this Court because of the Polish government and Polish law. Yet, the only evidence he has specifically identified falls quite clearly on the inadmissible side of the line.

In the final analysis, although the standards regarding the admissibility of evidence in extradition proceedings may seem fuzzy in the abstract, they may not actually be difficult to apply in practice. Certainly, this case comes closer than any this Court has seen to pointing out the absurdity of the law in this area. But, when viewed in context, the standards do make sense. Courts play a limited role in the extradition process; the larger role and the bigger questions are left to the executive branch. See *In re Rodriguez Ortiz*, 444 F. Supp. 2d

876, 883 (N.D. Ill. 2006)("extradition is an executive function, not a judicial one")(citing *Martin v. Warden,* 993 F.2d 824, 828 (11th Cir. 1993). *See also Vo v. Benov*, 447 F.3d 1235, 1237 (9th Cir. 2006)("[e]xtradition is a matter of foreign policy entirely within the discretion of the executive branch, except to the extent that the statute interposes a judicial function.")(citing *Lopez-Smith v. Hood*, 121 F.3d 1322, 1326 (9th Cir. 1997); *In re Metzger*, 46 U.S. (5 How.) 176, 188 (1847)); *Austin v. Healey*, 5 F.3d 598, 600 (2d Cir. 1993)("Extradition is primarily a function of the executive branch, and the judiciary has no greater role than that mandated by the Constitution, or granted to the judiciary by Congress.")(citing *Martin*, 993 F.2d at 828-29). If the law were as Mr. Mazur would like it to be, it might make this Court's rulings more predictable and it might make counsel's job easier, but it would lead to more vexing problems, requiring the courts to immerse themselves in matters of state and foreign policy that they would likely be ill-equipped to shape or enforce. *See In re Extradition of Burt*, 737 F.2d 1477, 1487 (7th Cir. 1984)(courts "must move with the circumspection appropriate when . . . adjudicating issues inevitably entangled in the conduct of our international relations")(citing *Romero v. International Terminal Operating Co.*, 358 U.S. 354, 383 (1959)). At the end of the day, that is why courts do this dance with the standards in extradition cases; they justify applying standards

13

that seem absurd on their face, yet make perfect sense in the broader scheme of things. Even Mr. Mazur concedes that allowing him to try his case here would implicate foreign policy concerns. In short, it is not a perfect process – far from it; but in most cases it does serve to balance the rights of the relators and the foreign policy interests at stake. Moreover, it is the process the Seventh Circuit has instructed courts here to apply. *See Eain*, 641 F.2d at 511. Unless and until the higher courts see fit to change current interpretation of the law, this Court is bound to follow it.

B.    Mr. Mazur's Discovery Motions

Having now scrutinized the applicable standards concerning what evidence is and is not admissible in these proceedings, the Court turns to Mr. Mazur's motions regarding discovery. As explained above, Mr. Mazur has filed two discovery motions, one seeking to compel the government to respond to his requests for the production of documents, and one seeking the issuance of subpoenas.

"Although there is no explicit statutory basis for ordering discovery in extradition proceedings, the extradition court has the inherent power to order such discovery procedures as law and justice require." *Oen Yin-Choy v. Robinson*, 858 F.2d 1400, 1407 (9th Cir. 1988)(citing *Quinn v. Robinson*, 783 F.2d 776, 817 n.41 (9th Cir. 1986)). "In exercising its discretion to grant or deny

14

discovery, an extradition court should consider that 'extradition proceedings are not to be converted into a dress rehearsal for trial' and 'whether the resolution of the contested issue would be appreciably advanced by the requested discovery.'" *Oen Yin-Choy*, 858 F.2d at 1407 (quoting *Emami*, 834 F.2d at 1452). Of course, at the extradition hearing – the proceeding for which Mr. Mazur seeks discovery – the contested issue will be whether or not probable cause exists. *See, e.g., Prasoprat v. Benov*, 421 F.3d 1009, 1014 (9th Cir. 2005)("[t]he only purpose of the extradition hearing is for the magistrate judge to determine whether the crime is extraditable and whether there is probable cause to support the charge.")(citing *Cornejo-Barreto v. Seifert*, 218 F.3d 1004, 1009 (9th Cir. 2000)). Probable cause exists if "there is evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the guilt of the accused"; in assessing the existence of probable cause, "'courts apply a "totality of the circumstances analysis" and "make a practical, common sense decision whether, given all the circumstances . . . there is a fair probability" that the defendant committed the crime.'" *In re Rodriguez Ortiz*, 444 F.Supp. 2d 876, 884 (N.D. Ill. 2006)(citing *In re Extradition of Guillen*, No. 90 CR 1056, 1991 WL 149623, at *8 (N.D. Ill. July 12, 1991) and quoting *In re Extradition of Okeke*, No. 96-7019P-01, 1996 WL 622213, at *5 (D.

N.J. Sept. 5, 1996); *Illinois v. Gates*, 462 U.S. 213, 238
(1983)). "[P]ersons challenging extradition have . . . 'no right
to contradict the demanding country's proof or to pose questions
of credibility as in an ordinary trial, but only to offer
evidence which explains or clarifies that proof.'" *Sahagian v.
United States*, 864 F.2d 509, 514 n.6 (7th Cir. 1988)(quoting
*Eain*, 641 F.2d at 511).

With these standards in mind, the Court turns to Mr. Mazur's
discovery motions. Mr. Mazur first seeks to compel the
government to produce documents in response to six requests. In
his first request, Mr. Mazur initially sought "[a]ll documents
provided by the Government of the United States to the Government
of Poland related to Edward Mazur, the prosecution of Edward
Mazur in Poland on the charge of enticement to murder General
Marek Papala or the extradition proceedings relating to Edward
Mazur in the United States." When the government objected, Mr.
Mazur narrowed the request; as currently framed, it seeks "[a]ll
communications from the United States to the government of Poland
relating to the merits or strength of the Polish government's
case against Mr. Mazur." Counsel for Mr. Mazur has indicated
that, as he understands it, the United States government
initially refused to grant the extradition request because the
Polish Government had no case against Mr. Mazur, and he wants to
know the basis of that initial refusal.

16

Even if it were true that the government initially refused the extradition request, in the end, the government directed the U.S. Attorney to file the complaint, putting the case squarely before this Court for the sole purpose of addressing the limited issue of whether the Polish government has probable cause to try Mr. Mazur on the solicitation of murder charge. Whatever may have come before is irrelevant. If the government has in its files information that relates to the question of probable cause, it must produce it, and the motion to compel is granted to that extent. Otherwise, the government may rightly refuse to produce documents in response to this request.

Mr. Mazur's second request calls for "[a]ll notes of interviews of Edward Mazur taken by federal law enforcement agencies, including the FBI, DEA, and the U.S. Customs Service." Counsel has indicated that he believes there is a discrepancy between what is contained in the formal report of one of the agents and what is contained in the notes from which the report was prepared. The Court is persuaded that the notes may actually lead to evidence that could be used to explain or clarify the evidence against Mr. Mazur, and the Court will therefore grant the motion to compel discovery responsive to request number 2. The Court cautions Mr. Mazur that the fact that it is allowing discovery on a particular line of inquiry, should not be construed as an indication that any such evidence obtained will

necessarily be admitted at the extradition hearing. Only
evidence that ultimately satisfies the standards set out above
will actually be admitted at the hearing.      Mr. Mazur's third
request seeks "[a]ll documents relating to any communications,
discussions, negotiations, or agreement between the United States
and the Republic of Poland concerning extradition to the United
States of wanted fugitives or other cooperation in return for
extradition of Edward Mazur." The Court fails to see how this is
relevant to the question of probable cause in this case; either
there is probable cause or there is not, and the substance of any
bargain simply does not affect the issue. The motion to compel
discovery responsive to request number 3 is denied.

In his fourth request, Mr. Mazur seeks "[a]ll documents
relating to exit from and entry to the United States for Edward
Mazur for the period of March-June, 1998, including but not
limited to passport records, immigration records, and U.S.
Customs declarations." Mr. Mazur has represented that the
government has agreed to retrieve and produce the requested
documents; there is, therefore, no issue with regard to this
request and no ruling is required at this time.

In his fifth request, Mr. Mazur seeks "[a]ll documents
provided by the Government of Poland to the Government of the
United States relating in any way to the extradition proceedings
of Edward Mazur which were not filed in the Court record of this

proceeding." In his motion, he argues that "the evidence in this case suggests that people who have never met Mr. Mazur are accusing him of soliciting to commit a murder, and there is good reason to believe that the Polish authorities have suborned these fabrications." Relator's Motion to Compel Discovery, p. 4. This explanation strongly suggests that the evidence is sought to controvert, not to clarify or explain the evidence presented. And this request may be designed to target the same types of evidence discussed above, relating to the prior inconsistent statements by witnesses, in which case the Court's earlier analysis would apply. Although the Court can clearly see why Mr. Mazur and his attorney would like to get their hands on documents such as those requested, such discovery would not "appreciably advance" the resolution of the limited issue before the Court. Mr. Mazur speaks in terms of "exculpatory" and "inculpatory" and he talks about fairness regarding the use of statements at trial; such notions - as strange as this may sound - have no bearing on these proceedings. This is not a trial, and it is not within this Court's purview to determine the credibility of witnesses or Mr. Mazur's guilt or innocence. See *Bovio*, 989 F.2d at 259; *Eain*, 641 F.2d at 511 *Prasoprat*, 421 F.3d at 1014. Whatever the Court may think of the standards imposed upon it by the body of law surrounding the extradition statute, it is bound to follow that law. Having said this, to the extent

19

documents exist that are responsive to request number 5 and that
would tend to explain or clarify the evidence presented, the
government is obliged to produce them.[2]  The motion to compel is
otherwise denied as to this request.

Mr. Mazur's sixth request seeks "[a]ll documents reflecting
or relating to any evidence which would tend to exculpate Edward
Mazur of the offense charged in Poland, including but not limited
to evidence bearing on the truthfulness of witnesses, including
Artur Zirajewski and Andrzej Zielinski." As explained, at least
in this forum, Mr. Mazur is not permitted to question credibility
or to contradict the evidence against him. *See Sahagian v.
United States*, 864 F.2d 509, 514 n.6 (7th Cir. 1988)(quoting
*Eain*, 641 F.2d at 511). Thus, evidence relating to the
truthfulness of witnesses Zirajewski and Zielinski would be
irrelevant and will not be compelled. In terms of the broader
category of evidence sought, again, such evidence is only
relevant for this Court's purposes if it would tend to explain or
clarify the evidence against Mr. Mazur. To that extent,

---

[2]The Court acknowledges that its ruling entrusts the government with the
charge of determining, at least in the first instance, whether certain
documents, to the extent any exist, would explain/clarify or controvert its
probable cause case. No doubt Mr. Mazur will argue that this is like putting
the fox in charge of the hen house. But, as the Court noted above, the
standards governing the presentation of evidence in an extradition hearing are
extremely difficult to apply in the abstract, but not so hard to apply once
the particular pieces of evidence are identified. The Court's ruling is not
ideal, but, in light of the law, it is the means most likely to achieve a just
end. The government is advised that, to the extent it has any doubt about
whether a particular document falls within the scope of what is compelled, it
should turn it over to the Court for an *in camera* inspection, and the Court
will make the call.

responsive documents should be produced, whether such documents are found in the files of the FBI, the Department of Homeland Security, the Department of State, or any other agency of the government that is involved in Mr. Mazur's case.[3]

Turning to the motion for issuance of subpoenas, Mr. Mazur asks the Court to authorize the issuance of five subpoenas in blank, noting that the standard forms for subpoenas in civil and criminal trials do not appear to fit in the context of an extradition hearing. Thus, he has modified the form used in criminal cases, which authorizes service anywhere in the United States, to reflect that the witness is compelled for purposes of an extradition hearing, not a criminal matter. The government argues that the request for subpoenas reflects Mr. Mazur's intent to "overstep, if not outright abuse, the bounds of discovery permitted in proceedings of this nature." Government's Response, p. 3. It argues that any subpoena request should be supported by an offer of proof as to what each subpoena is expected to produce, and, just as importantly, how it is relevant to the issues to be decided at an extradition hearing." *Id.*

The Court agrees that some offer of proof is necessary. At the hearing on these motions, counsel for Mr. Mazur advised that all of the subpoenas are intended to be served on individuals who

---

[3]As with request number 5, to the extent the government has any doubt about whether documents in its possession fall within the explain/clarify category, it should submit them to the Court.

are presently in the United States, one will be directed to a
State Department official who will testify about how Mr. Mazur's
case was handled internally, and one will be directed to a United
States police official with knowledge of the "cop-to-cop"
program; he admitted that he has not yet identified the witnesses
to be served with the remaining three subpoenas.

With regard to the State Department official and the
testimony about how the State Department arrived at the
conclusion that the extradition should be pursued, the Court does
not see how such evidence is relevant to the limited issues
before it. The fact is, the State Department *did* decide to grant
Poland's request; that officials there may have hesitated or that
they may initially have thought the case against Mr. Mazur weak,
simply does nothing to explain the evidence ultimately presented
in the extradition complaint.

The same is not true of the police official and the evidence
concerning the "cop-to-cop" program. Based upon the
representations made in court, the Court is persuaded that this
evidence may indeed explain the evidence against Mr. Mazur that
was offered in the extradition complaint. The Court will,
therefore, allow Mr. Mazur to subpoena the police official
discussed at the hearing on February 28, 2007. At some point it
is conceivable that testimony and documents provided by this
witness could be used to try to contradict the evidence presented

22

by the Polish government via the United States Attorney's office here. But the Court can address those concerns as they arise during the course of the extradition hearing.

With regard to the remainder of the subpoenas, without knowing who is to be served or what the substance of the testimony would be, the Court declines to issue the subpoenas. But, to the extent counsel is able to identify individuals with knowledge or information that is permissible, given the rulings above, the Court will consider further requests for subpoenas based upon an additional showing.

One additional note on discovery. At the hearing on the discovery motions, counsel for Mr. Mazur indicated that he intended to offer one or more experts to give testimony on the state of Poland's criminal justice system. Before spending any time and effort on this line of evidence, counsel is reminded, once again, that this Court's purpose is solely to determine whether sufficient evidence exists to show reasonable grounds to believe Mr. Mazur is guilty of the crime charged, and not to consider the adequacy of the police investigation or what fate awaits Mr. Mazur in Poland. *See Prasoprat*, 421 F.3d at 1016 ("[a]n extradition magistrate lacks discretion to inquire into the conditions that might await a fugitive upon return to the requesting country"; under the "rule of noniquiry," the courts stand clear of assessing whether extradition should be denied on

humanitarian grounds or because of the treatment and general lack of process the relator is likely to face in the requesting state; those considerations are left to the Secretary of State)(citing *Blaxland v. Commonwealth Dir. Of Pub. Prosecutions*, 323 F.3d 1198, 1208 (9th Cir. 2003)). Foreign policy concerns are the purview of the State Department, and, while the Secretary of State may be free to deny extradition based upon such concerns, this Court may not consider them unless they relate to the question of probable cause.

## Conclusion

For the reasons explained above, the Court grants in part and denies in part Mr. Mazur's motion to compel discovery [#22], and his motion for issuance of subpoenas [#24], and denies Mr. Mazur's motion to dismiss the complaint [#17].

Dated: March 15, 2007

ENTER:

Arlander Keys

ARLANDER KEYS
United States Magistrate Judge